2010 Ark. App. 606

**Mitchell Scott JOHNSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–175.**

Court of Appeals of Arkansas.

Sept. 15, 2010.

Paul Michael Gehring, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Little Rock, for appellee.

**WAYMOND M. BROWN, Judge.**

Mitchell Scott Johnson was sentenced by a judge after pleading guilty to financial identity fraud, theft by receiving, and misdemeanor possession of a controlled substance. We previously certified this case to the Arkansas Supreme Court to determine whether an appeal could be taken in this matter. The supreme court held that an appeal was proper.[1] We now consider Johnson's arguments: (1) the State should not have been allowed to introduce evidence of his juvenile criminal history and (2) the court handed down an illegal sentence. We reject both arguments, correct a clerical error in the judgment and commitment order, and affirm as modified.

## Background

The State charged Johnson with Class B felony financial identity fraud, Class C felony theft by receiving, and misdemeanor possession of a controlled substance (marijuana). Johnson pleaded guilty to the charges, but he asked the court for an "open plea" to the offenses, thereby allowing the court to set the sentence after a hearing. The court ultimately sentenced him to twelve years' imprisonment with an additional eight years' suspended imposition of sentence on the charge of financial identity fraud, ten years' suspended imposition of sentence on the theft-by-receiving charge, and twelve months' imprisonment for the misdemeanor possession charge. The two felony sentences are to be served consecutively to other federal charges.

### Evidence of Juvenile Criminal History

First, Johnson challenges the admissibility of his juvenile criminal history. While a juvenile, Johnson was adjudicated delinquent on five counts of capital murder and ten counts of first-degree battery. The State moved to have Johnson's juvenile record unsealed, and the court granted the motion, but only for impeachment purposes in the event Johnson opened the door to questions regarding the juvenile adjudications.

During the hearing, Johnson called his mother to testify on his behalf. Near the end of the direct examination, Johnson's attorney asked her what should happen to him. She replied:

> Well, I believe, too, that you should honor your laws.... I believe very much in that and I believe ... you own up to what you've done and take responsibility, but I believe also that because of who he is, and I believe this with all my heart, that this is a persecution, not a prosecution[.]

During the cross-examination, the State argued that Johnson's mother had opened the door to ask about the prior juvenile adjudication. Johnson disagreed. The court took a recess. When it came back on the record, the court remarked:

> As has been aptly stated throughout these proceedings there has been an 800-pound gorilla in this courtroom and we all know it, there's not a soul in the courtroom that's not aware of it, and we've gone through this little farce of pretending it's not here, but we know it is here, and I suspect that it has, to some degree, colored the perspective of the witnesses whether one degree or another, perhaps not greatly, but then on the other hand I suspect it has had an impact. And up until this point abid-

1. *See Johnson v. State,* 2010 Ark. 63, 2010 WL 1006439 (holding that an appellant may appeal evidentiary errors arising during the sentencing phase following a guilty plea, regardless of whether a jury was impaneled for that phase of the trial).

ing by the rules the Court has not permitted that gorilla to be revealed, but it's—but the door has been opened to it and I frankly think it needs to be opened to it so that we are all dealing with one another honestly. And I don't like these invisible gorillas running around my courtroom. I want everything to be visible.

With that, and over Johnson's objection, the prosecutor continued:

Q: Did you mean that because he's been convicted of five counts of capital murder and ten counts of battery in the first degree?

A: No, sir, that's not really what I meant.

Q: You said it was persecution. What do you mean by that if that's not what you mean?

A: Well, I was kind of referring to the—the kind of charges—the—the federal charges that—and—and, yes, because of who he is, that he was juvenile, but my understanding of the law that the juvenile case should be closed. It was a juvenile case. That's my interpretation. I don't know.

The prosecutor also wanted to admit a certified copy of the juvenile adjudication, but the court did not allow the evidence.

Johnson argues that the trial court erred in admitting his juvenile criminal history at the sentencing hearing. He relies on several statutory provisions, which allow such evidence to be admitted in limited circumstances.[2] He also denies that his mother's testimony opened the door, allowing the State to question her on the previous adjudication.

■■■ We do not consider Johnson's argument regarding the statutory provisions, as that argument was not presented to the trial court. Parties are bound by the scope and nature of the arguments and objections made at trial, and we do not consider any arguments not presented below.[3] For example, in *Vanesch v. State*,[4] the supreme court refused to consider whether juvenile adjudications were admissible during the guilt phase under certain rules of evidence when the only objection made below was whether they could be used to trigger the habitual-offender statutes. Here, the only argument presented to the trial court was whether Johnson's mother's testimony opened the door to questions about Johnson's juvenile criminal history. There was no objection as to the general admissibility of the criminal history. Accordingly, this argument is not preserved for appellate review.

■■■ Whether Johnson's mother opened the door to questioning about the juvenile adjudications is preserved for appellate review. When a defendant produces a character witness, he may open the door to evidence that might otherwise be inadmissible.[5] Once the door is open, the prosecutor may inquire into the witness's knowledge of specific instances of conduct, and there is no limit, other than relevancy, on the kind of instances of misconduct with respect to which cross-exami-

---

2. *See generally* Ark.Code Ann. § 9–27–345 (Repl.2009) (allowing delinquency adjudications for offenses where the juvenile could have been tried as an adult to be admitted during the sentencing phase in subsequent adult criminal proceedings against those individuals); Ark.Code Ann. § 16–97–103(3) (Repl.2006) (allowing delinquency adjudica-

tions to be admitted during the sentencing phase in limited circumstances).

3. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005).

4. 343 Ark. 381, 37 S.W.3d 196 (2001).

5. *Frye v. State*, 2009 Ark. 110, 313 S.W.3d 10.

nation may occur.[6] We review the admissibility of character evidence under the abuse-of-discretion standard.[7]

After Johnson's mother testified about Johnson's character, she suggested that Johnson was being persecuted for his actions. This allowed the prosecution to ask about why she thought Johnson was being persecuted rather than prosecuted. And the trial court did not abuse its discretion in allowing that inquiry to include questions about his juvenile criminal history.

■■ We also do not reverse because Johnson failed to show prejudice resulting from the admissibility of his juvenile criminal record. As he pleaded guilty to a Class B felony and a Class C felony, Johnson could have been sentenced to a total of thirty years in the Arkansas Department of Correction.[8] Instead, he was sentenced to twelve years' imprisonment, followed by eighteen years' suspended imposition of sentence. The general rule is that a defendant who has received a sentence short of the maximum sentence cannot show prejudice from the sentence itself.[9]

Johnson relies on *Vanesch* in arguing that he was prejudiced by the court admitting his juvenile record. There, the supreme court held that juvenile adjudications could not be used for the purpose of sentence enhancement under the habitual-offender law. And it was clear from the judgment and commitment order that the court sentenced the appellant as a habitual offender. The supreme court remarked

that it could only speculate as to the impact the inadmissible adjudications had on the sentences, and it remanded the case for resentencing.

We read nothing in *Vanesch* to cloud the general rule that a criminal defendant cannot show prejudice when he is sentenced short of the maximum. We also find *Vanesch* to be inapplicable here. The problem in *Vanesch* was that the criminal adjudications were clearly used to enhance the sentence under the habitual-offender statutes. The court did not apply those statutes here. Thus, even if the trial court erroneously admitted Johnson's juvenile criminal record, we hold that he was not prejudiced by that evidence. We affirm on this point.

*Illegal Sentence*

Johnson also argues that he was illegally sentenced. He notes that he was charged with and pleaded guilty to Class B felony financial identity fraud, but that the original and amended judgment and conviction orders reflect convictions for Class C felony financial identity fraud.[10] He then argues that, because the maximum sentence for a Class C felony is ten years[11] and because he was sentenced to more than ten years on that charge, he was illegally sentenced.

■ A sentence is void or illegal when the trial court lacks the authority to im-

---

6. *Id.* (quoting *Smith v. State,* 316 Ark. 407, 872 S.W.2d 843 (1994)).

7. *Garner v. State,* 81 Ark.App. 309, 101 S.W.3d 857 (2003).

8. *See* Ark.Code Ann. § 5–4–401(a)(3) (Repl. 2006) (setting a twenty-year maximum sentence for Class B felonies); (a)(4) (setting a ten-year maximum sentence for Class C felonies).

9. *Buckley v. State,* 349 Ark. 53, 76 S.W.3d 825 (2002).

10. Financial identity fraud is generally a Class C felony, but it is a Class B felony if the victim is an elder person or a disabled person. Ark.Code Ann. § 5–37–227(e) (Supp.2009). Here, the victim was partially paralyzed.

11. *See* Ark.Code Ann. § 5–4–401(a)(4).

pose it.[12]  Though Johnson did not raise the issue before the trial court, the issue of a void or illegal sentence is a matter of subject-matter jurisdiction, which cannot be waived by the parties and may be raised for the first time on appeal.[13]

■ But Johnson was not illegally sentenced; the judgment and commitment order contains a typographical error.  The State charged Johnson with a Class B felony.  Prior to pleading guilty at a hearing, the court told Johnson that he was charged with committing a Class B felony.  And Johnson's guilty-plea statement indicates that he was pleading guilty to a Class B felony.  The error in the judgment and commitment order may be the result of the sentencing grid information, filed with the court, indicating a Class C felony.  But clerical errors do not prevent the enforcement of a judgment and commitment order.[14]

|₈We correct the judgment and commitment order to reflect that Johnson pleaded guilty to and was sentenced for Class B felony financial identity fraud.  With this modification, we affirm on this point as well.

Affirmed as modified.

ROBBINS and KINARD, JJ., agree.

12.  *Mayes v. State,* 351 Ark. 26, 89 S.W.3d 926 (2002).

13.  *See id.*

14.  *Carter v. Norris,* 367 Ark. 360, 240 S.W.3d 124 (2006).