Cite as 2022 Ark. App. 458

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

No. CR-22-54

| | | |
|---|---|---|
| THOMAS D. WILCOXON | | **Opinion Delivered**  November 9, 2022 |
| | APPELLANT | APPEAL FROM THE ASHLEY COUNTY CIRCUIT COURT [NO. 02CR-20-63] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CREWS PURYEAR, JUDGE |
| | | AFFIRMED |
| | APPELLEE | |

**WAYMOND M. BROWN, Judge**

Appellant Thomas Wilcoxon was found guilty by an Ashley County Circuit Court jury of attempted internet stalking of a child and pandering. He was sentenced to an aggregate term of thirty-five years' incarceration in the Arkansas Department of Correction. On appeal, Wilcoxon first challenges the sufficiency of the evidence supporting his convictions. He further argues the circuit court (1) erred in excluding certain photographs related to his entrapment defense and (2) made various errors during the sentencing phase of trial. We affirm Wilcoxon's convictions for attempted internet stalking of a child and pandering.

On March 6, 2020, Wilcoxon was charged by felony information with one count of internet stalking of a child in violation of Arkansas Code Annotated section 5-27-306.[1] On May 17, 2021,

---

[1](Supp. 2021).

the State amended the information, charging Wilcoxon, as a habitual offender,[2] with one count of attempted internet stalking of a child[3] and one count of pandering.[4]

Wilcoxon filed a motion in limine on May 21, seeking to admit into evidence ten photos from a Facebook account created under the fictitious name of "Julie Williams." One photo displayed the profile picture associated with the Julie Williams Facebook account; another photo revealed that the birth date associated with the Facebook account was July 30, 1996. Another photo showed comments left by other individuals on Julie Williams's profile picture. The remaining seven photos were of sexually explicit or suggestive content that were posted on the Julie Williams Facebook page. At a pretrial hearing, the circuit court ruled admissible, the photo that showed the date of birth posted on Julie Williams's account but withheld ruling on the other nine photographs.

At the jury trial held on June 29, Mark Griever, an investigator with the Ashley County Sheriff's Department, testified that his duties included monitoring the fictitious Julie Williams Facebook account. He stated that the account was established to aid with investigations into both narcotics trafficking and sex trafficking involving minors. Julie Williams's displayed date of birth, July 30, 1996, made her twenty-four years old at the time the interactions with Wilcoxon took place. Griever testified that Wilcoxon first contacted the account via Facebook Messenger on February 28, 2020, and the messages were ongoing and continued until March 3. A log of the messages exchanged during that time span was admitted into evidence. Griever stated that approximately 266 messages

---

[2]In 2005, Wilcoxon pleaded guilty to the charges of rape and introduction of a controlled substance into the body of another person.

[3]Ark. Code Ann. § 5-3-201(a)(2) (Repl. 2013).

[4]Ark. Code Ann. § 5-27-304(a)(2) (Repl. 2013).

were exchanged between Wilcoxon and the fictitious Julie Williams along with eight photographs. Wilcoxon also attempted to contact Julie Williams via Facebook call on the evening of March 2. Griever testified that once Wilcoxon's messages indicated his interest in sex, Julie Williams was portrayed as a fourteen-year-old female. Prior to Wilcoxon's cross-examination of Griever, the circuit court ruled that the nine outstanding photographs from the motion in limine were inadmissible based on lack of evidence that Wilcoxon ever saw those posts. On cross-examination, Griever testified that Wilcoxon requested a meeting with Julie—they arranged to go mud riding.

Wilcoxon moved for a directed verdict on both counts at the close of the State's case. Specifically, related to the attempted-internet-stalking-of-a-child charge, Wilcoxon argued that he never actually scheduled a meeting with Julie Williams, a meeting never took place, and there was sufficient evidence of renunciation. Regarding the pandering charge, Wilcoxon asserted that the evidence was insufficient to establish he knew he was communicating with a child. Further, Wilcoxon argued there was sufficient evidence of entrapment as to both charges. The circuit court denied the directed-verdict motions.

For his case-in-chief, Wilcoxon elected not to testify. However, he did call one witness, Wendy Stevens. Stevens testified that Wilcoxon is one of her best friends and that the two of them had dated for approximately a year from 2019 to 2020. She stated that on March 2, 2020, she and Wilcoxon had a conversation about the Julie Williams Facebook account. Stevens testified she told Wilcoxon that Julie looked familiar, but she was unsure where she knew her from, whether it was from college or through Stevens's twenty-four-year old son.

Wilcoxon renewed the directed-verdict motions at the close of all the evidence. The circuit court again denied the motions. The jury found Wilcoxon guilty of both offenses. During

sentencing, the State introduced a certified copy of a judgment and commitment order filed on January 11, 2005, showing that Wilcoxon had been convicted of rape and introduction of a controlled substance into the body of another and was consequently sentenced to an aggregate term of fourteen years' incarceration. The State called Investigator Griever, who testified that Wilcoxon's 2005 rape conviction involved his fifteen-year-old niece and that, as a result of the prior convictions, Wilcoxon is a registered sex offender. Wilcoxon testified on his own behalf at sentencing. He stated that he initially contacted Julie because there were provocative posts on her Facebook account and that, according to her listed date of birth, she was twenty-four-years old. Regarding his 2005 prior convictions, Wilcoxon testified that he had purchased alcohol for the two of them, and his niece provided the drugs. He stated that two days later, he was told he had raped his niece.

During sentencing, on direct, regarding whether he thought he would have to serve 100 percent of any sentence imposed in the instant case, Wilcoxon testified, "ADC goes by your record and mine is pretty bad." On cross-examination, although the circuit court found that Wilcoxon had opened the door to questioning about his prison record and parole eligibility, "out of an abundance of caution," the circuit court prohibited any further questions on convictions not already in evidence. However, over Wilcoxon's objection and following a question about whether his behavior in prison had anything to do with his parole eligibility and Wilcoxon's subsequent denial, the circuit court admitted into evidence a certified copy of Wilcoxon's "pen pack"—a record of his behavior in jail—from the Arkansas Department of Correction. The pen pack showed that Wilcoxon lost class status during his prior incarceration due to behavioral issues and disciplinary sanctions.

Wendy Stevens, who testified during the guilt phase, again testified during the sentencing phase of Wilcoxon's trial. She testified that Wilcoxon had acted as a father figure to her fourteen-

4

year-old daughter, and she intended for him to adopt her daughter. Stevens also testified that she is aware of Wilcoxon's prior convictions. As a result of this testimony from Stevens and Wilcoxon's testimony also referring to other convictions, the circuit court found that Wilcoxon had sufficiently opened the door to evidence of his prior convictions. The State was then permitted to cross-examine Stevens about Wilcoxon's prior criminal history. She testified that she was aware he had a homicide charge from when he lost control of a vehicle and hit another vehicle, which resulted in the death of a young child. Stevens also mentioned that Wilcoxon had a charge related to an incident in which he caught his wife with another man.

Following the jury's recommendation, in a sentencing order filed on June 30, 2021, Wilcoxon was sentenced to twenty years' incarceration for attempted internet stalking of a child and fifteen years' incarceration for pandering. The sentences were ordered to be served consecutively. This appeal followed.

For his first point on appeal, Wilcoxon asserts there was insufficient evidence to support his convictions.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.[5] When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[6] We will affirm a judgment of conviction if substantial evidence exists to support it.[7] Substantial evidence is evidence

---

[5]*Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[6]*Id.*

[7]*Id.*

which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture.[8] We defer to the jury's determination on the matter of witness credibility.[9] Jurors do not and need not view each fact in isolation; rather they may consider the evidence as a whole.[10] The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be from direct evidence.[11] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's.[12] We need consider only that testimony that supports the guilty verdict.[13]

Arkansas Code Annotated section 5-27-306(a)(1)[14] provides that a person who is twenty-one years of age or older commits the offense of internet stalking of a child if the person knowingly uses a computer online service, internet service, or local internet bulletin board service to seduce, solicit, lure, or entice a child fifteen years of age or younger in an effort to arrange a meeting with the child for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity.

---

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[13]*Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600.

[14](Supp. 2021).

If the person tries to arrange a meeting with an individual fifteen years of age or younger, it is a class B felony, even if the meeting did not take place.[15]

Wilcoxon was convicted of attempted internet stalking of a child. Arkansas Code Annotated section 5-3-201(a) provides that a person attempts to commit an offense if he or she purposely engages in conduct that would constitute an offense if the attendant circumstances were as the person believes them to be, or constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as the person believes them to be.

In his directed-verdict motion at trial, Wilcoxon argued that the State failed to satisfy the elements of attempted internet stalking of a child because he never scheduled an actual meeting with Julie Williams, and no such meeting ever took place. He also contended that he successfully renounced the offense when he sent a Facebook message to Julie on March 3 informing her that he did not want to meet because she was too young for him. On appeal, Wilcoxon first argues there was insufficient evidence of his mens rea with regard to Julie's age. He argues that because Julie's birthdate listed on the Facebook account reflected an age of twenty-four years old, he "lacked the requisite knowledge that the person operating the Julie Williams Facebook account was a child." This argument was not raised in relation to the attempted-internet-stalking-of-a-child charge below;[16] therefore, it is not preserved for appeal.[17]

---

[15]Ark. Code Ann. § 5-27-306(b)(1) (Supp. 2021).

[16]In his motion for directed verdict, Wilcoxon raised the issue of Julie Williams's listed date of birth in connection with the pandering charge but failed to do so for the criminal-attempt charge.

[17]*Lewondowski v. State*, 2022 Ark. 46, 639 S.W.3d 850.

Wilcoxon next contends the State failed to satisfy the elements of attempted internet stalking of a child because there was insufficient evidence that he attempted to meet Julie Williams for any purpose, let alone any sexual purpose. To the extent Wilcoxon challenges the failure to prove a sexual purpose, we need not address it because the issue was not raised below.[18] Further, a person may be guilty of the offense of attempted internet stalking of a child even if a meeting never occurred.[19]

Despite his contention to the contrary, Wilcoxon's communications with Julie to meet up were not mere hypotheticals. He ascertained where she lived and asked, "When are you free?" He then acknowledged he would be free at 7:00 p.m. the following day, March 3, and he was able to meet Julie at a particular place, the Pine Hill store. Wilcoxon then suggested they meet that very night, to which Julie stated, "I can't get out tonight." While they discussed going mud riding, when Julie asked, "U gonna bring protection?" Wilcoxon responded, "I keep protection." There was sufficient evidence to support a finding that Wilcoxon attempted to arrange a meeting with Julie, who he was told was a fourteen-year-old child.

Moreover, Wilcoxon engaged in communications via Facebook Messenger with Julie Williams, who he was informed from the outset was a fourteen-year-old girl in the ninth grade, and not a twenty-four-year-old woman as shown on her social media profile page. He requested photographs, stated that he likes teenage girls and always has "protection," asked if her intention was to have sex with him, and stated they would discuss it "in person." Wilcoxon also told Julie to "read

---

[18]*Id.*

[19]*See* Ark. Code Ann. § 5-27-306(b)(1) (Supp. 2021).

between the lines" and stated he was scared and being cautious against "incriminating myself." We hold that the evidence supports Wilcoxon's conviction for attempted internet stalking of a child.

Wilcoxon additionally asserts there was sufficient evidence of renunciation of any criminal purpose. It is an affirmative defense to a charge of criminal attempt that the defendant abandons his or her effort to commit the offense and, by the abandonment, prevents the commission of the offense, under circumstances manifesting a voluntary and complete renunciation of his or her criminal purpose.[20]

On March 3, 2020, at 8:26 a.m., Wilcoxon sent the following message to Julie:

> Hey just wanted to let you know that I'm really not interested in meeting you, you are way to [sic] young for me and I'm not into young girls. I was just playing games with you yesterday, sorry for that, I wish you the best

This message was sent online the morning after Wilcoxon arranged to meet up with fourteen-year-old Julie Williams for sexual purposes. Notably, for the offense of internet stalking of a child—not the criminal attempt thereof—if a person tries to arrange a meeting with an individual fifteen years of age or younger, it is a class B felony, even if the meeting does not take place. At the time the aforementioned message was sent to Julie, the elements of attempted internet stalking of a child had already been met. Wilcoxon, at that point, had already taken substantial steps in a course of conduct intended to culminate in the commission of the offense, i.e., he had already taken substantial steps in knowingly using the internet to entice a child fifteen years of age or younger in an effort to

---

[20]Ark. Code Ann. § 5-3-204(a)(1) (Repl. 2013).

arrange a meeting with the child for the purpose of engaging in sexual conduct. A defendant cannot renounce a crime that he or she has already committed.[21]

Wilcoxon next argues there was insufficient evidence to support his conviction for the offense of pandering. A person commits pandering if he knowingly solicits any visual or print medium depicting a child participating or engaging in sexually explicit conduct with knowledge of the character of the visual or print medium being involved.[22] Specifically, he argues there was insufficient evidence that Wilcoxon knew that he was communicating with a child; thus, there was insufficient evidence that he solicited a child.

Wilcoxon argues that the "Facebook profile that [he] was communicating with listed Julie Williams's age as 24 with a birth date of July 30, 1996, and Wendy Stevens testified that she informed Wilcoxon she knew Julie Williams either through college or through her 24-year old son." He contends that the evidence "clearly shows that this person is over 18 years old." However, Wilcoxon was informed early in the online interactions that the person he was communicating with was fourteen years old and a ninth-grade student. At no point did Julie claim to be anything other than a fourteen-year-old child. Therefore, he was on notice that he was messaging an underage child when he solicited photos with the following messages: "Send me a picture of you that a cop wouldn't send to ease my mind"; "an undercover police wouldn't send a picture of their naked ass lol"; "If your [sic] not a cop send what you want to, but the police would not send a full frontal nude pic"; "full frontal is great"; and "How about a pus [sic] shot." Moreover, in an effort to encourage Julie to send him sexually explicit photographs, Wilcoxon sent sexually suggestive photos of himself, followed by "[y]our turn"

---

[21]*Gilbert v. State*, 88 Ark. App. 296, 198 S.W.3d 561 (2004).
[22]Ark. Code Ann. § 5-27-304(a)(2).

and "[w]here is my picture." Accordingly, we find sufficient evidence to support Wilcoxon's conviction for the offense of pandering.

Next, Wilcoxon contends the evidence was sufficient to support an affirmative defense of entrapment. Entrapment occurs when a law enforcement officer or any person acting in cooperation with a law enforcement officer induces the commission of an offense by using persuasion or other means likely to cause a normally law-abiding person to commit the offense.[23] Conduct merely affording a defendant an opportunity to commit an offense does not constitute entrapment.[24] A defendant bears the burden of proving entrapment by a preponderance of the evidence.[25] The purpose of the entrapment statute is to discourage government activity that might induce innocent persons to engage in criminal conduct.[26]

Wilcoxon alleges that each time he attempted to withdraw from the conversation with Julie, "officers operating the account would attempt to reel him back in." For example, he asserts that when Julie indicated she was in ninth grade, he attempted to cease communication by replying, "Well take care." Julie then responded, "??" and the conversation continued with Wilcoxon stating, "I thought you were in college." The messaging continued back and forth for some time and then resumed later with Wilcoxon asking Julie if she had "Snapchat." That evening, Wilcoxon again reinitiated contact when he sent a message stating, "Hope you have a great night." Again, the

---

[23]Ark. Code Ann. § 5-2-209 (Repl. 2013).

[24]*Id.*

[25]*Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257.

[26]*Id.*

following day, Wilcoxon reinitiated contact asking Julie about her day. This communication continued and developed into making plans to meet up at 7:00 p.m. the next night at the "Pine Hill store." Although Wilcoxon claims that "but for" the actions of law enforcement he would not have engaged in the conduct, his continued reinitiation of messaging was done on his own accord and not at the prompting or inducement of a law enforcement officer. We find no error on this point.

For his next point on appeal, Wilcoxon alleges that the circuit court abused its discretion in ruling that certain photographs posted on the Julie Williams Facebook page were irrelevant to his entrapment defense and, thus, not admissible.

Circuit courts are afforded wide discretion in evidentiary rulings.[27] Specifically, in issues relating to the admission of evidence under Arkansas Rule of Evidence 401, we have held that a circuit court's ruling is entitled to great weight and will not be reversed absent an abuse of discretion.[28] Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.[29]

When proving the affirmative defense of entrapment, a defendant is allowed reasonable latitude in presenting whatever facts and circumstances he claims constitutes an entrapment, subject

---

[27]*McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003).

[28]*Id.*

[29]*Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004).

to ordinary rules of admissibility.[30] Evidence having any tendency to make the existence of entrapment more probable is admissible.[31]

Prior to trial, Wilcoxon filed a motion in limine seeking to admit ten photographs associated with the Julie Williams Facebook account. The circuit court admitted one photo listing Julie Williams's birth date as July 30, 1996, but withheld ruling on the other photos. During trial, the circuit court found that the other nine photos were irrelevant and therefore inadmissible. Wilcoxon objected, arguing that the photos were relevant to his entrapment defense. The circuit court stated

> No, I understand— —that's the feed or what they might call the newsfeed on Julie Williams' account, but all of those messages are from September through November of 2019— — and I have nothing before me that [Wilcoxon] ever saw any of those posts, and until I know that information, I can't— —I will not find them admissible.
>
> . . . .
>
> . . . [T]here is wide latitude for him and this entrapment defense, but it's still subject to the ordinary rules of admissibility. And right now I have nothing before me that says, other than speculation, that the defendant saw this entire feed.

Without laying a proper foundation for the photographs and offering some proof that Wilcoxon saw the posts or relied on them in forming his belief about Julie Williams's age, we find no abuse of discretion by the circuit court in excluding the photographs. For his remaining points on appeal, Wilcoxon asserts errors related to rulings made during the sentencing phase of trial.

A circuit court's decision to admit evidence in the penalty phase of a trial is reviewed for an abuse of discretion.[32] Evidence relevant to sentencing may include relevant character evidence or

---

[30]*Young v. State*, 308 Ark. 647, 826 S.W.2d 814 (1992).

[31]*Id.*

[32]*Stover v. State*, 2014 Ark. App. 393, 437 S.W.3d 695.

evidence of aggravating and mitigating circumstances.[33] Similar crimes are relevant to show aggravating circumstances, the character of the defendant who is being sentenced, and the lack of potential rehabilitation.[34] Proof of subsequent similar crimes at sentencing is not more prejudicial than probative.[35] Further, when a defendant either testifies or produces a character witness, he may open the door to evidence that might otherwise be inadmissible.[36] Once the door is open, the State may inquire into the witness's knowledge of specific instances of conduct, and there is no limit, other than relevancy, on the kind of instances of misconduct with respect to which cross-examination may occur.[37]

First, Wilcoxon argues the circuit court erred in admitting the "pen pack" from his previous incarceration. The ADC pen pack contained information regarding his criminal history and his conduct while in prison. Specifically, the pen pack included information about a previous incarceration for aggravated robbery and numerous disciplinary violations that occurred while Wilcoxon served a fourteen-year sentence for a prior rape conviction. Wilcoxon argues that because no proof of an aggravated-robbery conviction was introduced, and the ADC disciplinary violations were not convictions, the pen pack contained "mere allegations" that were both unsubstantiated and prejudicial.

---

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Johnson v. State*, 2010 Ark. App. 606, 378 S.W.3d 152.

[37]*Id.*

14

Second, Wilcoxon contends the circuit court abused its discretion by permitting the State to cross-examine character witness, Wendy Stevens, regarding Wilcoxon's prior bad acts. Specifically, the circuit court allowed the State, without evidence of a related conviction, to elicit testimony from Stevens about Wilcoxon's purportedly causing the death of a young child in a motor-vehicle accident. The State maintains that the "prior bad act" was relevant to sentencing as an aggravating or mitigating circumstance. The State further asserts that Wilcoxon opened the door to inquiries regarding his prior convictions.

For his final assertion of error in the sentencing phase of trial, Wilcoxon argues that the circuit court erroneously permitted the State to cross-examine defense witness Stevens about a purported home break-in by Wilcoxon as the result of the court's incorrect recollection of the evidence. He contends the State asked, "The man you know . . . who broke into a house . . ." to which Wilcoxon objected, explaining that the question assumed information that had not been admitted into evidence. The circuit court overruled the objection, stating that facts surrounding the break-in had previously been introduced and heard by the jury. Wilcoxon argues that the circuit court's recollection was inaccurate, and no testimony regarding a home break-in had been given.

An evidentiary error in the sentencing phase of a trial may be declared harmless and the appellate court may affirm when the evidence of guilt is overwhelming and the error is slight.[38] To determine if the error is slight, the court looks to see if the defendant was prejudiced.[39] In order to

---

[38]*Kelley v. State*, 2009 Ark. 389, 372 S.W.3d 373.

[39]*Id.*

demonstrate prejudice, a defendant must demonstrate that the sentence was either outside of the statutory range or the maximum allowed.[40]

Wilcoxon was convicted of criminal attempt and pandering, both of which are class C felonies punishable as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501(b)[41] by imprisonment for not less than three nor more than twenty years in the Arkansas Department of Correction and a fine not to exceed $10,000. Here, for his criminal-attempt conviction, Wilcoxon was sentenced to a term of twenty years' incarceration. Because he was not also ordered to pay a fine, Wilcoxon was not sentenced to the maximum sentence allowable for the offense. Likewise, for his pandering conviction, Wilcoxon was sentenced to a term of fifteen years' incarceration and not ordered to pay a fine; again, short of the maximum sentence. A defendant who is sentenced within the statutory range, and short of the maximum sentence, cannot establish prejudice from the admission of evidence at sentencing.[42] Because he did not receive the maximum sentence and was sentenced within the statutory range, Wilcoxon cannot demonstrate prejudice; therefore, any alleged error in sentencing is slight. Consequently, because we find the evidence of guilt overwhelming, any sentencing error is declared harmless.

For the reasons stated above, we affirm Wilcoxon's convictions and the resulting sentences.

Affirmed.

VIRDEN, GRUBER, and WHITEAKER, JJ., agree.

---

[40]*Shreck v. State*, 2016 Ark. App. 374, 499 S.W.3d 677.

[41](Supp. 2021).

[42]*Gillean v. State*, 2015 Ark. App. 698, 478 S.W.3d 255.

VAUGHT and MURPHY, JJ., dissent.

**LARRY D. VAUGHT, Judge, dissenting**. Like Judge Murphy, I dissent from the majority opinion. While I would affirm Wilcoxon's pandering conviction, I would reverse and dismiss Wilcoxon's conviction for attempted internet stalking of a child. However, rather than joining Judge Murphy in reversing the conviction on the basis of Wilcoxon's renunciation defense, I would simply hold that the State failed to present sufficient evidence to support the conviction.

In order to support a conviction for internet stalking of a child, the State must prove that the defendant knowingly used a computer online service, internet service, or local internet bulletin board service to "seduce, solicit, lure, or entice a child of 15 years of age or younger in an effort to arrange a meeting with the child for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity." Ark. Code Ann. § 5-27-306(a)(1) (Supp. 2021). The crime is a Class B felony if the person tries to arrange a meeting with an individual fifteen years of age or younger, even if the meeting never takes place. Ark. Code Ann. § 5-27-306(b)(1). Here, Wilcoxon was not convicted of internet stalking of a child; he was convicted of an attempt to commit that crime. As the majority opinion explains, Arkansas law provides that a person attempts to commit an offense if he or she purposely engages in conduct that would constitute an offense if the attendant circumstances were as the person believes them to be, or constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as the person believes them to be. Ark. Code Ann. § 5-3-201(a) (Repl. 2013).

Wilcoxon argues that the State failed to present sufficient evidence that he took substantial steps toward meeting Julie for any purpose, let alone for the purpose of having sex. I agree and would reverse on this basis. Judge Murphy and I have both concluded that the State failed to demonstrate

17

that Wilcoxon took substantial steps toward arranging a meeting with Julie, but while Judge Murphy views that lack of evidence solely through the lens of Wilcoxon's renunciation defense, I view the issue as the State's failure to prove the elements of the offense. In order to affirm Wilcoxon's conviction, we must be satisfied that the State presented sufficient evidence that Wilcoxon took substantial steps toward meeting Julie for the purpose of sex. In this case, that bar has not been met.

To be clear, no meeting between Wilcoxon and Julie was arranged or planned, and none occurred. On March 2, 2020, Wilcoxon and Julie messaged each other repeatedly, and some of those messages included the idea that they could go "mud riding" together at some point in the future. In some of the messages, Wilcoxon mentioned bringing other people along to go mud riding with them. At 7:24 p.m., Julie volunteered that she could get to the Pine Hill store but could not go that night. At 7:26 p.m., Wilcoxon responded, "OK, tomorrow it is." However, despite the fact that Wilcoxon and Julie continued to send dozens of messages back and forth for approximately an hour after that exchange, neither of them made any further attempt to confirm that they were meeting the following day, specify a meeting time, arrange transportation, discuss how they would recognize each other upon arrival, discuss what they would do together after meeting, or in any other way make a concrete plan to meet. Their conversation ended that night without any plans in place to meet up. At 8:26 the following morning, Wilcoxon messaged Julie and told her he was not interested in meeting her, and their communications ended.

I would hold that Wilcoxon stopped short of committing the crime of attempt because he did not take substantial steps toward formulating a real plan to meet Julie. The Arkansas Supreme Court has held that the phrase "effort to arrange a meeting," as used in the statute, means that the defendant "must have made a determined attempt to organize or plan a coming together." *Holcomb v. State*, 2014

Ark. 141, at 4, 432 S.W.3d 600, 603. In *Holcomb*, the supreme court reversed the appellant's conviction, holding that the State presented insufficient evidence that the defendant made a determined attempt to arrange a meeting. *Id*. The court concluded that Holcomb had only "pose[d] hypotheticals" about meeting the minor and had declined the minor's request to meet several times. *Id*. at 9, 432 S.W.3d at 605. We cited *Holcomb* in reversing a similar conviction in *Taliaferro v. State*, in which we held:

In this case, the circumstances are similar to those in *Holcomb*. The text messages between Rocky and K.K. show that they discussed meeting for sexual activity, but they decided to delay the meeting until K.K. turned sixteen. Further, on other occasions when Rocky proposed a meeting, he quickly stated that he did not actually plan to go to K.K.'s house. These messages do not demonstrate that Rocky made a determined attempt to plan to meet K.K. As in *Holcomb*, Rocky only "pose[d] hypotheticals" about meeting K.K. 2020 Ark. App. 68, at 10–11, 597 S.W.3d 58, 63.

Here, the State argues that *Holcomb* and *Taliaferro* are inapplicable because they involved convictions for internet stalking of a child, not for the crime of attempt. However, our attempt statute still requires proof of "substantial steps," which is lacking in the present case. In keeping with *Holcomb* and *Taliaferro*, I am not willing to affirm a conviction solely on the basis of vague, undeveloped, or hypothetical discussions about possibly meeting at some undefined point in the future. In order to constitute a crime, there must be more. Here, because there was no evidence that Wilcoxon took substantial steps to set up an actual meeting with Julie for the purpose of sex, I would hold that sufficient evidence does not support his conviction for attempted internet stalking of a child, and I would reverse and dismiss that conviction.

**MIKE MURPHY, Judge, dissenting**.   I dissent because I believe there was sufficient evidence of renunciation. Accordingly, I would reverse the attempted-internet-stalking-of-a-child conviction.

An affirmative defense is established as a matter of law if there are no factual issues to be resolved by the trier of fact. *Owens v. State*, 300 Ark. 73, 81, 777 S.W.2d 205, 209 (1989). It is an affirmative defense to a charge of criminal attempt that the defendant abandons his effort to commit the offense, and by the abandonment prevents the commission of the offense, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose. Ark. Code Ann. § 5-3-204(a)(1) (Repl. 2013).

Wilcoxon contends that he successfully renounced any criminal purpose when he sent the following Facebook message to Julie Williams: "Hey I just wanted to let you know that I'm really not interested in meeting you, you are way too young for me and I'm not into young girls, I was just playing games with you yesterday, sorry for that, I wish you the best."

I disagree that Wilcoxon had taken substantial steps toward the commission of the offense by the time the message was sent. While some steps were taken, they were not *substantial* steps. The meeting was not arranged with specificity. For instance, they only generally discussed going to the Pine Hill store "tomorrow." There was no description of what Wilcoxon would be wearing or driving, and there was no specific time mentioned.

I believe Wilcoxon called off the meeting well before anything was set in stone. But even if he had taken a substantial step, the Model Penal Code, upon which our abandonment statute is

modeled,[1] encourages recognizing withdrawal, even after the last proximate act has occurred, to encourage desistance at a time when such encouragement is most important. Model Penal Code § 5.01, cmt. at 360 (Am. L. Inst. 1985).

In this case, we are challenged with determining at what point the "attempt" is complete and if it is too late to renunciate. It is a difficult question. Arkansas has little caselaw to guide us.[2] Renunciation requires a fact-specific analysis. We must look to each case's individual circumstances to determine if a voluntary and complete renunciation of the *criminal purpose* occurred. It is my opinion that to hold otherwise under the facts of the present case would be to make the defense essentially unavailable in Arkansas for inchoate offenses. Renunciation is a valid defense contemplated by statute, even for an attempt charge.

"A criminal attempt is a 'complete offense' in the sense that one who has carried a criminal effort to such a point that it is punishable, can no more wipe out his criminal guilt by an abandonment of his plan than a thief can obliterate the larceny by a restoration of the stolen chattel." 2 Wayne R. LaFave, *Substantive Criminal Law* § 11.5(b)(2) (3d ed. 2018) (citation omitted). But many of the cases denying the defense are assault cases, which are distinguishable because something in the way of a completed offense has been committed. *Id.* Using *Gilbert* as an example: by the time police were notified around 9:00 p.m. of an abducted child, Gilbert had already thrown the child over the railing

---

[1]Arkansas follows Model Penal Code § 5.01(4) (WL current through 2021 Am L. Inst. annual meeting).

[2]*Gilbert v. State*, 88 Ark. App. 296, 198 S.W.3d 561 (2004), cites the statute governing renunciation, but it is distinguishable from the facts in our case. In *Gilbert*, we held that a defendant cannot renounce a crime she already has committed. Specifically, we held that Gilbert's crime of attempted first-degree murder was completed "long before her purported renunciation of the offense." *Id.* at 303, 198 S.W.3d at 566.

of Mount Nebo in twenty-eight-degree weather at 2:00 a.m. Gilbert, under these circumstances, does not get the benefit of an abandonment defense—the criminal purpose was not abandoned by telling the police roughly where she threw the toddler off the mountain some twenty plus hours prior.

Compare this with the steps taken by Wilcoxon. Unlike Gilbert, Wilcoxon had not already thrown the baby over the railing. In fact, he had not even driven up the mountain. Wilcoxon asked Julie when she was available; he said when he was available. But even if this were a substantial step, public policy dictates the necessity of recognizing voluntary abandonment as a defense to a charge of attempt. We want people to renunciate criminal purpose. Did Wilcoxon not do exactly that?

And so, while Wilcoxon may have even "taken a substantial step" toward internet stalking, there were still steps left to take, such as confirming a time. The abandonment defense

> allows one to, in effect, "uncommit" a crime already committed. One "who has committed a crime [can] abandon or renounce [the] criminal enterprise and thereby extinguish any previously incurred criminal liability. [The defense] amounts to an official absolution for guilt already incurred." This makes sense because, while one has already committed a crime (the attempt offense), one has not yet committed the more serious crime that one intends to commit (the completed offense). When the abandonment occurs, there is still something left to do that one originally intended to do, and still intends to do, and can now voluntarily renounce and desist from doing.

Richard Sanders, *Abandoning an Attempt to Do the Unintended: Applying the Abandonment Defense to Attempted Homicide Offenses with No Intent-to-Kill Element*, Fla. Bar J.(2015) (footnote omitted) (quoting Daniel G. Moriarty, *Extending the Defense of Renunciation*, Temple L. Rev., at 2, 4 (1989) (89-AUG FLBJ 44).

In the case before us today, the renunciation was voluntary because the record lacks evidence of an extrinsic factor or apparent circumstance to support that it was involuntary, no meeting was set, and Wilcoxon explained he was "just playing games." There were still steps for Wilcoxon to

take, yet he did not take them. To the extent that the steps taken *were* substantial, they were sufficiently renounced. A successful abandonment defense means absolution from wrongdoing. As mentioned above, recognizing withdrawal, *even after* the last proximate act has occurred, will encourage desistance at a time when such encouragement is most important. It is contrary to public policy and the intent of the legislature in its inclusion of abandonment as a defense to not allow it on these facts.

For these reasons, I would reverse the attempted-internet-stalking-of-a-child conviction as a matter of law because there was a voluntary and complete renunciation of criminal purpose that took place.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.