Cite as 2024 Ark. App. 169

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-23-297

| | |
|---|---|
| KYLER PERKINS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered March 6, 2024<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NOS. 72CR-21-917; 72CR-21-918; 72CR-21-969]<br><br>HONORABLE MARK LINDSAY, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Kyler Perkins appeals a Washington County Circuit Court order revoking his probation and sentencing him to sixteen years in the Arkansas Department of Correction. On appeal, he argues that the circuit court erred in admitting hearsay evidence in violation of the Confrontation Clause. Finding no merit in his argument, we affirm.

In January 2022, Perkins pled guilty to two counts of theft by receiving (credit or debit card); one count of theft by receiving; and one count of theft of property. He was sentenced to six years' probation on each count, to run concurrently. He also pled guilty to one count of fraudulent use of a credit or debit card and received a one-year probated sentence.[1] As a

---

[1]These underlying offenses were charged in three separate case numbers—72CR-21-917; 72CR-21-918; and 72CR-21-969—but they were adjudicated together in the same sentencing order.

condition of his probation, Perkins was ordered to report as directed to his supervising officer; to maintain employment; to obtain prior approval before changing his place of residence; to obey all federal and state laws; to pay all his court-ordered fines, fees, and restitution; and to submit himself to any rehabilitative, medical, or counseling programs deemed appropriate by the court or his supervising officer. He was also prohibited from using, selling, distributing, or possessing any controlled substance and was ordered to submit to random testing for the use of controlled substances.

In July 2022, the State filed a motion to revoke Perkins's probated sentence. The State alleged that he had violated the terms and conditions of his probation by committing the offenses of theft of property, first-degree criminal mischief, and criminal trespass. The State also alleged that he was in arrears on his court-ordered financial obligations.

The revocation hearing was held on January 26, 2023. Prior to the introduction of testimonial evidence, the State introduced without objection the sentencing order, a certified copy of the conditions of probation, an amended petition for revocation filed that same day, and a certified copy of the ledger sheet identifying the payments and arrearages on his financial obligations. The amended petition to revoke alleged that Perkins had violated the conditions of his probation by committing the offenses of theft of property, first-degree criminal mischief, and criminal trespass; by failing to report; by testing positive for methamphetamine; by failing to go to substance-abuse treatment; by failing to maintain

employment; by failing to update his address; and by being in arrears on his court-ordered obligations.[2]

The State's first witness was Perkins's probation officer, Laken Marciano. She testified that Perkins had been sentenced to seventy-two months' probation; that he had been advised of the conditions of probation by administration during his intake; and that he had signed them. She noted he had similarly been informed of the conditions of his probation by his probation officer at his first meeting to ensure he understood his obligations. She further recounted that, when he reported to her, she would remind him of the conditions and would address any noncompliance issues with him.

Officer Marciano further testified that Perkins had reported as directed initially but later began calling frequently to reschedule his appointments. She claimed he then began to miss office visits and assessments; sometimes he would contact her later, and sometimes she would have to do a home visit to reengage. She stated that he had missed two appointments before the revocation was filed and had not reported at all since August 11, 2022.

---

[2]It is not clear from our record that the amended petition for revocation was filed in all three underlying case numbers. While we recognize that due process requires that Perkins be given notice of the conditions he was alleged to have violated, *see Hill v. State*, 65 Ark. App. 131, 985 S.W.2d 342 (1999) (probationer's due-process rights were violated when his probation was revoked on the basis of evidence of probation violations not enumerated in the petition to revoke), the denial of any right, even a constitutional one, must be objected to at trial to be preserved for appeal. *Wilder v. State*, 2021 Ark. App. 131 (affirming the revocation on violations not contained in the State's petition to revoke because Wilder failed to object on that basis in the circuit court). Because Perkins did not object when the circuit court announced its findings in open court, he failed to preserve any due-process argument he might have had. *See Rorie v. State*, 2024 Ark. App. 106.

As for employment, Officer Marciano testified that Perkins had worked briefly at Taco Bell but failed to return to work after he was arrested in July on other charges. She stated she did not know if he had obtained employment since.

As for drug testing and use, Officer Marciano testified that Perkins had tested positive three times for methamphetamine and amphetamine—two confirmed through urine sample and one by his admission of methamphetamine use. She further testified that he had been scheduled for a substance-abuse assessment three times, and she was not aware that he had attended any of the assessments or obtained any treatment.

As for Perkins's failure to update his address, Officer Marciano testified that she conducted a home visit in June or July and was told by Perkins's sister that he no longer lived there and had moved out the previous month. Perkins later informed her that he was homeless. As for his failure to pay his court-ordered financial obligations, she stated that when the petition was filed, he was delinquent on his fines, restitution, and supervision fees.

The State's next witness was Hannah Dirks Clark. Clark was employed by Swamp Ox, a business that custom builds UTV racks for side by sides. She testified that a Parker sixteen-foot tandem-axle trailer with a lift gate had been stolen from her employer's parking lot. Surveillance footage, which was introduced into evidence, showed the vehicle being taken from the lot. Clark testified that she provided the video to the police and disseminated screen shots in an effort to locate the truck.

When the trailer was later located, Clark discovered it had been altered. The metal sides had been cut off and the liftgate had a big "U" cut into it. The spare tire and jack were

missing, and it had been painted green. The license plate had been removed and replaced with a stolen one. Clark recognized the trailer because it had been wrecked previously, and a different axle had been installed. She attempted to verify the VIN, but the plate had been removed; however, the last four digits of the VIN were welded on the frame at the factory, and she was able to match them to the paperwork from the stolen trailer.

Officer Thomas Lowe of the Tontitown Police Department was the last witness to testify for the State. He was assigned to follow up on the report of the stolen trailer. He stated that surveillance video showed a green single-cab Dodge Ram pickup with chrome bed rails, damage to the front bumper, and the word "Sport" on the side. It also showed the driver of the truck was a younger white male with long shoulder-length brunette hair and that he was wearing a white tank top. The passenger was a male in a black jumpsuit and a hat. He was able to see the driver fairly well, but not the passenger.

After reviewing the video and the still photos provided by Swamp Ox, Officer Lowe visited the location where the trailer had been found. He saw a truck matching the one on the video with a green trailer attached. Officer Lowe contacted the property owner and was given permission to search the property as well as the truck.

The truck's owner, Mike Huddleston, identified the man in the video as "Bro or Po." At that point, defense counsel objected to this testimony on confrontation-clause grounds. The State argued that the testimony was not offered for the truth of the matter asserted but was to explain the next steps in his investigation. The court overruled the objection.

Officer Lowe then testified that Huddleston informed him that the man on the video was staying in a modular home on the property. Perkins's girlfriend, who was also on the property, told Officer Lowe that "Bro or Po" is Perkins. When Officer Lowe contacted Perkins, Perkins was wearing a tank top and had the same general facial features, build, and hair as the man in the video. Perkins denied any involvement in the trailer theft.

As part of his investigation, Officer Lowe also inspected the trailer. It appeared that some newer metal work had been done and that it had fresh green paint. He testified that the VIN plate had been removed, which suggested criminal activity, but Ms. Clark had been able to identify the trailer through its axle and to verify through her paperwork that it was the stolen trailer and that the last four digits of the VIN had been welded underneath the neck of the trailer.

Finally, he testified that a secondary suspect had provided a written statement confessing that he and Perkins had stolen the trailer and that it was Perkins's idea to steal the trailer and paint it green. Defense counsel once again objected on confrontation grounds. The court overruled the objection stating that "this is not a trial. This is a revocation hearing."

After the State rested, Perkins testified. He admitted that he used methamphetamine while on probation but claimed he was going through a rough patch in life. He admitted he missed his substance-abuse assessment but denied having a substance-abuse problem. He admitted he was currently unemployed but claimed he did some mechanic work and odd jobs. He stated that he had recently put in applications at Walgreens and Walmart.

As for his failure to report, he stated that he sought the advice of his family members who were felons, and they told him he no longer needed to report after the petition to revoke was filed. He did not contact his probation officer to confirm, instead relying on his family's advice.

As for the theft, he denied being involved in the theft of the trailer, denied driving the truck seen on the surveillance video, and instead implicated Mike Huddleston in the crime. He gave no explanation for the arrearages on his court-ordered financial obligations nor did he testify regarding his failure to maintain an approved residence.

At the conclusion of the hearing, the court found that Perkins had violated the conditions of his probation by failing to abide by the reporting requirements; by failing to maintain employment; by failing his drug tests and admitting methamphetamine usage; by failing to attend his court-ordered drug assessment; by changing residences without informing his probation officer; and by failing to pay his court-ordered financial obligations. Finally, he found that Officer Lowe's and Ms. Clark's testimony regarding the theft of the trailer was credible and that, given the other evidence surrounding the theft (including the second suspect's confession naming Perkins), there was sufficient evidence for purposes of revocation to find that he had committed the theft of the trailer. As a result, the court revoked Perkins's probation and sentenced him to ten years on the Class C felony and six years on each of the Class D felonies, to run concurrently with one another but consecutively to the ten-year term, for a total of sixteen years.

Perkins now appeals his revocation. On appeal, he argues that the circuit court erred in admitting evidence in violation of the confrontation clause. He claims that this error was not harmless because the court sentenced him to the maximum and ordered that the counts run consecutively and that, if the court had not admitted the testimony regarding the theft case, the sentence might have been different.

Although a defendant in a revocation hearing is not entitled to the full panoply of rights that attend a criminal prosecution, he is entitled to due process. *Goforth v. State*, 27 Ark. App. 150, 152, 767 S.W.2d 537, 538 (1989). The United States Supreme Court has held that in a revocation proceeding, the accused is entitled to "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.*, 767 S.W.2d at 538 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). This holding is codified at Arkansas Code Annotated section 16-93-307(c)(1), (2) (Repl. 2016), which states that the defendant has the right to counsel and to confront and cross-examine an adverse witness unless the court specifically finds good cause for not allowing confrontation.

In a probation-revocation proceeding, the circuit court must balance the probationer's right to confront witnesses against grounds asserted by the State for not requiring confrontation. *Id.*, 767 S.W.2d at 538 (citing *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986)). First, the court should assess the explanation the State offers of why confrontation is undesirable or impractical. *Id.*, 767 S.W.2d at 538. A second factor that

8

must be considered, and one that has been focused on by a number of courts, is the reliability of the evidence that the government offers in place of live testimony. *Id.*, 767 S.W.2d at 538.

However, we need not determine whether a confrontation-clause violation occurred in this instance because any error in its admission was harmless. It is well settled that trial error involving the Sixth Amendment right to confront adverse witnesses is subject to a harmless-error analysis. *Green v. State*, 2015 Ark. App. 291, at 5, 461 S.W.3d 731, 734. Whether a Confrontation Clause violation is harmless error depends on a variety of factors, including the importance of the witness's testimony in the State's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the State's case. *Id.*, 461 S.W.3d at 734 (citing *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001)).

In *Green*, this court affirmed the circuit court's revocation decision despite its error in permitting an out-of-court statement in violation of the defendant's right to confront witnesses. We held that the error was harmless because there was other evidence that supported the revocation, rendering the out-of-court statement unnecessary. *Id.* at 5, 461 S.W.3d at 734; *see also Roston v. State*, 362 Ark. 408, 410, 208 S.W.3d 759, 761 (2005) (holding that the circuit court's violation of the Confrontation Clause was harmless error because other evidence supported the circuit court's revocation decision).

The same is true here because evidence regarding the theft of the trailer was not necessary to prove the State's case for revocation. Perkins admitted the use of methamphetamine during his probation; he admitted he failed to report to his probation officer on the advice of his family members; and he admitted he did not complete his substance-abuse testing as directed. He also did not explain his failure to pay his fines and fees or his failure to notify his probation officer of his change of address. Thus, there were multiple alternative bases upon which the court could have revoked his probation. When the circuit court bases its decision on multiple independent grounds and the appellant fails to attack any independent, alternative bases, we will affirm. *Clark v. State*, 2019 Ark. App. 362, at 5, 584 S.W.3d 680, 683. As a result, the admission of the out-of-court statements, even if erroneous, was harmless error. *Ryan v. State*, 2016 Ark. App. 105, at 6, 484 S.W.3d 689, 693–94.

Perkins, however, claims that the introduction of the error was not harmless because the court took the theft case into consideration when sentencing Perkins to the maximum terms of imprisonment. He claims that, had that evidence not been admitted, the sentence might have been different. His argument lacks merit.

In a revocation proceeding, the circuit court has discretion in the sentence imposed and is authorized to impose any sentence that it could have imposed originally. Ark. Code Ann. § 16-93-308(g)(1)(A) (Supp. 2021). Here, Perkins was sentenced within the statutory

guidelines. *See* Ark. Code Ann. § 5-4-401(a)(4) & (5) (Repl. 2013).[3] If a sentence is within the limits set by the legislature, the appellate court is not at liberty to reduce it. *Williams v. State*, 320 Ark. 498, 898 S.W.2d 38 (1995). The circuit court here was faced with evidence of multiple violations by Perkins of the terms and conditions of probation—some of which were admitted—and was within its authority to impose the sentence it did. Any argument that the circuit court's determination would have been different is entirely speculative.

Moreover, a defendant who is sentenced within the statutory range—and short of the maximum sentence—cannot establish prejudice. *Tate v. State*, 367 Ark. 576, 583, 242 S.W.3d 254, 260–61 (2006) (declining to decide alleged sentencing-phase error because the defendant received less than the maximum sentence and therefore could not establish a prejudicial error). Because Perkins's sentences did not include a fine, which would have been permissible, he was not given the maximum sentence. *See Wilcoxon v. State*, 2022 Ark. App. 458, at 15, 655 S.W.3d 686, 697 (stating that although Wilcoxon was sentenced to the maximum term of imprisonment for his criminal-attempt conviction, he was not also ordered to pay a fine; therefore, Wilcoxon was not sentenced to the maximum sentence allowable for the offense). Likewise, because Perkins was not sentenced to the maximum sentence, he cannot show prejudice since he did not receive the maximum sentence allowed.

---

[3]For a Class C felony, the maximum sentence is ten years' incarceration in the Arkansas Department of Correction and a ten-thousand-dollar fine. Ark. Code Ann. § 5-4-401(a)(4); Ark. Code Ann. § 5-4-201(a)(2) (Repl. 2013). For a Class D felony, the maximum sentence is six years' incarceration and a ten-thousand-dollar fine. Ark. Code Ann. § 5-4-401(a)(5); Ark. Code Ann. § 5-4-201(a)(2).

For the foregoing reasons, we affirm.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.