Cite as 2022 Ark. 46

# SUPREME COURT OF ARKANSAS

No. CR-19-901

| | | |
|---|---|---|
| NICHOLAS MATTHEW LEWONDOWSKI | | Opinion Delivered: February 24, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-18-85] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| | | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Nicholas Matthew Lewondowski appeals from his convictions by a Garland County jury on three counts of capital murder and felony-firearm enhancement, for which he was sentenced to three consecutive terms of life imprisonment without parole. On appeal, he argues that (1) the lack of a verbatim record regarding the court's handling of a jury note and the replaying of his interview requires reversal; (2) his defense counsel had a conflict of interest due to prior representation of a State's witness; (3) the trial court erred by denying his motions to suppress his statements to police; and (4) the evidence was insufficient to support the verdicts. We affirm.

Lewondowski was charged with capital murder in the shooting deaths of Dory Power, Brenda Lawson, and Paul Power. Before trial, the State waived the death penalty. The trial took place April 22–26, 2019. The evidence showed that all three victims had been shot in the head at Brenda's house on Nevada Street in Hot Springs. They were discovered following a report James Coble made to police on the evening of December 5, 2017. Coble, Lewondowski, and

Dory had been at Coble's home, which he shared with his mother, on December 4. At some point late that night, Lewondowski left with a woman named Morgan Berry. Coble and Dory went to sleep, and when Coble woke up on December 5, Lewondowski had returned. Coble testified that Lewondowski was agitated and angry at Dory because some of his belongings—a lighter and a knife—were missing. When Dory and Lewondowski left Coble's home, Dory appeared to be frightened, and Lewondowski would not let Coble accompany them. Lewondowski returned alone approximately an hour to an hour and a half later, still in possession of a gun. He told Coble, "Jimbo, man, dude pulled a gun on me and it went bad and I killed all three of them." He enlisted Coble's help to destroy evidence and to move vehicles from Brenda's house to make it appear that no one was home. Coble was scared of Lewondowski, and when Lewondowski left his home, Coble took his mother to spend the remainder of the day at various public places. He reported the shootings to police and was interviewed that night. Coble led officers to evidence at his home that included a trash bag of clothes Lewondowski had been wearing and various items belonging to the victims. In addition, he told officers where to find Paul's white Suburban and Dory's black Pontiac. Physical evidence found at Brenda's home included a rifle, which was not the murder weapon, a spent bullet, and a footprint that matched a pair of black boots located at Coble's house that had Dory's blood on one.

Jason Murders, Brenda's son, testified that his mother had kicked him off her property, but he had been staying in a shed there when he heard gunshots in the distance. The following morning, he approached the house to retrieve two jackets, but Lewondowski was coming out of the house carrying a set of keys. He told Jason that no one was home but that "they don't want

anyone on the property." Lewondowski went back inside the house and obtained the jackets for Jason. Other evidence included Lewondowski's statement to the person he was staying with when he was arrested that "after he killed the first one he had to kill 'em all." Morgan Berry testified to Lewondowski's strange behavior on December 4 and 5. Another witness, Scott Gilbert, testified that while both were in an Arkansas Department of Correction facility where Lewondowski was awaiting trial, Lewondowski attempted to solicit him to kill Coble. The jury also watched Lewondowski's lengthy interview at the Hot Springs Police Department following his arrest. During his interview, Lewondowski admitted using methamphetamine but denied killing the three victims. The jury found Lewondowski guilty of three counts of premeditated and deliberated capital murder, and this appeal followed.

I. *Sufficiency of the Evidence*

Although Lewondowski challenges the sufficiency of the evidence in his last point on appeal, we must address it first for purposes of double jeopardy. *See Sweet v. State*, 2011 Ark. 20, at 9, 370 S.W.3d 510, 518. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Gillard v. State*, 372 Ark. 98, 100–01, 270 S.W.3d 836, 838 (2008). We have repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Lewondowski argues that the evidence that he was the perpetrator of the three homicides was "underwhelming and missing." He points to the lack of an eyewitness, confession, or

forensic evidence to directly tie him to the shootings. Furthermore, he seeks to cast doubt on James Coble's testimony tying him to the victims around the time of their deaths and concealing the homicides by moving cars. He suggests that Coble had "an unusual amount of motivation to point the finger at [him]." However, this court does not weigh the evidence presented at trial or assess the credibility of the witnesses, because those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, at 7, 594 S.W.3d 856, 862. In this case, the circumstantial evidence presented, along with the testimony from witnesses that Lewondowski confessed to killing multiple people, constitutes substantial evidence supporting the jury's verdicts of guilt. We hold that the evidence was sufficient to support the verdicts and affirm on this point.

II. *Jury Note*

The record includes a note from the jury, identified as Court's Exhibit 1, stating, "We would like to watch the interview w/ Nick that Detective Fallice [sic] did after initially taken [sic] Nick into custody." Although included in the record, initially there was no indication how the circuit court had responded to the note, if at all. After Lewondowski's opening brief was filed, this court granted the State's motion to remand and settle the record surrounding the jury note. The circuit court held a hearing to settle the record, and a supplemental record was filed. The appeal was submitted to this court, and we remanded for another hearing to settle the record due to Lewondowski being deprived of his right to counsel at the first hearing to settle the record. *Lewondowski v. State*, 2021 Ark. 132. The circuit court held a second hearing to settle the record, and the resulting supplemental record was filed on July 30, 2021. On appeal, Lewondowski argues that the circuit court's non-compliance with Arkansas Code Annotated section 16-89-

4

125(e) (Repl. 2005) and the lack of a verbatim record require reversal in this case. For the reasons

that follow, we disagree.

In its order settling the record, the trial court found:

The note from the jury marked at trial as Court's Exhibit 1 stated, "We would like to watch the interview with Nick that Detective Fallis did after initially taking Nick into custody". Jana Hawley, the certified reporter and keeper of the record in this trial had possession of this evidence. Ms. Hawley did not send to the jury room with the other evidence admitted at trial the evidence the note referred to because it was a CD/DVD format and it required a computer/laptop player and connection to a television screen to view.

When the jury presented its note, all the attorneys and the court agreed Ms. Hawley would play the evidence in the jury room. Ms. Hawley followed the same procedure she has followed during her forty-three year career as a court reporter in hundreds of jury trials to play evidence in this format. She took the laptop and the television into the jury room after knocking on the door of the jury room and stating, "Please stop talking". Ms. Hawley testified in her forty-three years of reporting jury trials, no jury has ever continued to talk after she asked them to stop deliberations and talking. Then she set up the video to play the interview described in the note; played the video on the television screen; took the CD/DVD out; disconnected the laptop from the television and took the laptop out of the jury room. As she came out of the door, she told the jury "you may resume deliberations".

Ms. Hawley listened to and recorded the admitted CD/DVD interview presented in full to the jury during the trial. She transcribed the CD/DVD interview in full from the record for the appeal in this case. She stated under oath that it did not contain any information other than the interview admitted at trial. This was the recollection of all the attorneys involved in trial of the case, including the defense attorneys.

The COURT FINDS the record, including the supplemental record provided herein, demonstrate no violation of Ark. Code Ann. 16-89-125(e) in this case because the jury asked for and received an admitted exhibit. The jury did not indicate to the court by their note they had a "disagreement between them as to any part of the evidence" or that they "desire(d) to be informed on a point of law" A.C.A. 16-89-125(e). There was no interaction between the trial judge and the jury during deliberations. The jury simply requested admitted evidence they were entitled to view pursuant to A.C.A. 16-89-125(d)(3). No one contests the Court admitted in full the CD/DVD requested by the jury during the trial on the

5

record and that the jury heard the entire taped statement during the trial, on the record, in the courtroom with all parties present. After the request by the jurors during deliberations to 'watch the interview with Nick (Defendant) that Detective Fallis did after initially taking Nick into custody', the attorneys merely met and queued the admitted evidence for the jury to watch again. All parties agree this procedure was not on the record and that no one objected to it. With agreement of all the attorneys involved in the case including Defendant's attorneys and for various reasons reflected in the Defense attorney's testimonies, the parties allowed Ms. Hawley to play the admitted evidence to the jury this way. Not a single witness suggested, alleged or concluded the procedure regarding the jury's note presented new evidence for the jury to see. The attorneys at trial are all esteemed officers of the court and there is no evidence of any improprieties on their part. This procedure did not constitute a critical stage of the criminal proceeding. It was merely a means of presenting the admitted evidence in electronic format to the jury at their request.

We turn now to the authorities cited by the parties on appeal. Arkansas Code Annotated section 16-89-125, Jury instructions and deliberations, provides in pertinent part:

(e) After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

This court has stated that the purpose of section 16-89-125(e) is to protect against any further steps being taken with respect to evidence unless done in open court with counsel present. *Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006). Also relevant is Ark. Sup. Ct. Admin. Order No. 4, which requires a verbatim record of all proceedings in criminal cases, including discussions concerning jury notes and audio contained in videos or other recordings that are presented to the court or the jury, whether in open court or in camera. Ark. Sup. Ct. Admin. Order No. 4(a).

On appeal, Lewondowski argues that additional content was on the four CDs containing his interview with Detective Fallis, which were admitted as State's Exhibit 28 and played on the

6

prosecutor's computer. Lewondowski claims that the lack of a contemporaneous, verbatim record means this court cannot be sure what the jury actually saw in the deliberation room. Lewondowski relies on *Davlin v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993). In *Davlin*, this court reversed the judgment of conviction for rape and remanded for a new trial based on a violation of section 16-89-125(e) and the defendant's absence—over his counsel's objection—when a videotape of the victim's statement to police was replayed in the jury-deliberation room. Crucially, in that case, the record stated that the videotape *would be* replayed in the jury room just as it was at trial, with certain prejudicial portions deleted. However, the record was silent with respect to what actually occurred in the jury room. Therefore, this court found that the State could not rebut the presumption of prejudice in the replaying of the tape.

In *Anderson v. State*, 367 Ark. 536, 242 S.W.3d 229 (2006), the appellant alleged that the circuit court erred in allowing the deliberating jury to replay the tape recording of his statement in the jury room because it was not in open court and was outside his and his counsel's presence. The audiotape of appellant's statement had been admitted into evidence and was played for the jury during the trial. The jury did not make a direct request for the tape; however, during deliberations, the jury requested a paper exhibit. Consistent with the circuit court's practice, all exhibits, including the tape and a tape player, were sent into the jury room. On appeal, this court rejected the appellant's argument that allowing the jury access to the tape during deliberations was a violation of Ark. Code Ann. § 16-89-125(e). This court distinguished *Davlin*, holding that there was no violation of Ark. Code Ann. § 16-89-125(e) because the jury received an admitted exhibit, and there was no danger of additional evidence being introduced by giving the exhibit to the jury during deliberations.

This case falls somewhere between *Davlin* and *Anderson*. There was no verbatim record of the discussion between the court and counsel about how to respond to the jury note. This was error under Admin. Order No. 4. Furthermore, the requested portion of the interview was played in the jury-deliberation room, outside the presence of the judge and the parties and without the benefit of a verbatim record. Unlike in *Anderson*, we cannot say there was no danger of additional evidence being introduced because there were additional items on the prosecutor's laptop and there was additional content on the CDs (chain-of-custody reports and intervals of time when the detectives were out of the interrogation room) that the jury had not seen during the trial. This was also error, and a presumption of prejudice arises. *See Davlin*, *supra*. However, on this record, we hold that the State has rebutted the presumption of prejudice. According to the testimony of the court reporter, defense counsel, and the deputy prosecutors, the parties agreed to the procedure for replaying the interview. The video was set to the appropriate time stamp at the beginning of the interview, which is what the jury asked to see. The circuit court credited the testimony of the court reporter and found that she followed her established procedure for playing evidence in this format. Replaying evidence that had previously been admitted and made an exhibit during the trial is not error because there is nothing to indicate that Lewondowski suffered any prejudice when the interview was replayed.

Finally, to the extent that Lewondowski argues error because he was not present when the tape was replayed, we note that his counsel made a strategic decision to waive his presence while the interview was replayed due to Lewondowski's potential behavior during the video. Lewondowski was not prejudiced by the replaying of the admitted interview or his absence from the jury room during the replaying. We affirm on this point.

### III. *Conflict of Interest*

Under this point, Lewondowski argues that his attorney, Tim Beckham, a public defender, had a conflict of interest because he had previously represented State's witness Scott Gilbert. Lewondowski contends that Beckham should have been disqualified and that he was prejudiced by the defense team's "lackluster" cross-examination of Gilbert, which—notably—was conducted by co-counsel Mark Fraiser. At a pretrial hearing, Beckham informed the circuit court that he had represented Gilbert about ten years earlier and introduced a notarized statement in which Gilbert waived any conflict of interest stemming from Beckham's representation of Lewondowski. The statement also noted that Beckham could not use or reveal information known to him about Gilbert unless it was already in the public domain.

Here, there was no significant risk that Lewondowski's representation would be materially limited by Beckham's responsibilities to Gilbert. Beckham represented Gilbert ten years prior in an entirely unrelated matter. Lewondowski's arguments focus on the alleged "lackluster" cross-examination of Gilbert and his argument that Gilbert's waiver should not have been accepted by the circuit court. Lewondowski emphasizes the lack of his informed consent in writing but fails to acknowledge that he clearly stated on the record that he wanted Beckham to remain as his counsel: "I would like to waive that conflict, Your Honor. I just wanted to make sure that without a shadow of a doubt that that does not in some way put the handcuffs on him from being able to impeach Mr. Scott Gilbert in any way, Your Honor. . . . and I would like him to remain one of my counsel." In light of the tenuous argument that a conflict existed and Lewondowski's on-the-record statement that he wanted Beckham to remain as his attorney, we affirm on this point.

IV. *Custodial Statements*

Before trial, Lewondowski filed a motion and an amended motion to suppress his statement at the Hot Springs Police Department when he was initially taken into custody. At the pretrial motion hearing, defense counsel argued that (1) Lewondowski invoked his right to counsel in the police car on the way to the station, and he never should have been interviewed without counsel present; (2) Lewondowski was intoxicated and could not knowingly and intelligently waive his *Miranda* rights; and (3) there was a second invocation of his right to counsel prior to statements made to Lieutenant Jessup. The trial court entered a detailed order denying the motion to suppress in all respects except that Lewondowski's statements to Lt. Jessup were inadmissible. However, the circuit court later reconsidered this ruling and allowed the entire statement into evidence.

On appeal, Lewondowski argues that the circuit court erred by denying his motions to suppress his statements. He contends that questioning by Detective Mark Fallis of the Hot Springs Police Department, after his waiver of *Miranda* rights, should have ceased when he "invoked his constitutional rights to counsel during his interrogation" five separate times. Lewondowski points to the following statements he made:

- "I need to quit cause I don't want to incriminate myself. I don't want to sit here and say something wrong, you know what I'm saying. I didn't get much sleep last night and I don't wanna say anything that gonna incriminate myself."

- "I don't even wanna say nothing else. I don't wanna say anything else, Mike cause I'm telling you, Man, this ain't right. Jimbo's setting me up."

- "I ain't saying no names. I've gotta shut up. I'm just incriminating myself, Mike. I'm making it worse on me and you're getting me, while I'm high and I'm f***ing~"

- "I don't even know why I'm here sitting here talking cause I should be f***ing have a lawyer and I should be f***ing not incriminating myself."

- "I'm not trying to incriminate myself either though."

Det. Fallis continued interviewing Lewondowski until, after approximately eight hours of being in the interrogation room, Fallis stopped the interview because Lewondowski had unequivocally invoked his right to counsel. The interview resumed at Lewondowski's initiation.

On appeal, in reviewing a circuit court's refusal to suppress a statement, this court makes an independent determination based upon the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 309, 107 S.W.3d 136, 144 (2003). The circuit court's ruling will be reversed only if it is clearly against the preponderance of the evidence. *Id.* Any conflict in the testimony of the witnesses is for the circuit court to resolve. *Id.* When an accused has invoked the right to counsel, he "is not subject to further interrogation . . . unless [he] himself initiates further communication, exchanges, or conversations with the police." *Osburn v. State*, 2009 Ark. 390, at 10–11, 326 S.W.3d 771, 779 (citing *Edward v. Arizona*, 451 U.S. 477, 484–85 (1981)). "While the accused may initiate further contact with the police, the impetus must come from the accused, not the police." *Id.* at 11, 326 S.W.3d at 779.

On appeal, Lewondowski focuses on several statements he made to Det. Fallis concerning his desire to stop talking, i.e., invoke his right to remain silent and one time mentioning a lawyer. None of these statements were brought to the circuit court's attention for a ruling. At the pretrial hearing and the renewal of motions at trial, the defense pointed to Lewondowski's statements in the police car on the way to the station and on the statement unequivocally invoking his right to an attorney. He never argued to the trial court that he had invoked his right to remain silent.

On appeal, an appellant is limited to the scope and nature of the arguments he or she made below that were considered by the circuit court in rendering its ruling. *Barker v. State*, 2014 Ark. 467, at 3, 448 S.W.3d 197, 199. We will not consider new arguments raised for the first time on appeal or consider factual substantiation added to bolster the allegations made below. *Id.* Therefore, we affirm on this point.

## V. *Rule 4-3(a)*

Because Lewondowski was sentenced to life imprisonment, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Lewondowski in compliance with Arkansas Supreme Court Rule 4-3(a). No prejudicial error has been found.

Affirmed.

WOOD, J., concurs.

*Hancock Law Firm*, by: *Sharon Kiel*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.