Cite as 2025 Ark. App. 591

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-23-790

| | | |
|---|---|---|
| TREMAIN HUGGINS | | Opinion Delivered December 10, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT |
| V. | | [NO. 01SCR-20-11] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE DONNA GALLOWAY, JUDGE |
| | | AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**BART F. VIRDEN, Judge**

Tremain Huggins appeals his conviction of two counts of aggravated assault and one count of possession of a firearm by certain persons, arguing that the circuit court (1) erroneously failed to bring the jurors into the courtroom when they asked questions during deliberation, which resulted in prejudice; and (2) allowed him to represent himself at his trials. We affirm.

I. *Relevant Facts*

Huggins was charged by amended information with one count of possession of a firearm by certain persons, three counts of aggravated assault, and four counts of committing a terroristic act. Huggins was represented by appointed counsel at several pretrial hearings in August and September 2022. At the November 14, 2022 pretrial hearing, Huggins, who was

still represented by appointed counsel, requested to represent himself at trial. The court strongly advised against self-representation, and the matter was set for a hearing. At the March 8, 2023 hearing, Huggins was represented by private counsel, Richard Grasby. Grasby explained to the court that Huggins refused to answer his questions or talk about the case. Huggins had threatened to file a complaint against Grasby because he refused to file a motion to dismiss for lack of evidence to prove damages and probable cause. The court advised Huggins that his attorney had practiced for many years, and he had reasons for not filing the motion. The court explained that it intended to grant Grasby's motion to be relieved as counsel, and a continuance until July would be necessary because the trial was in less than a week, which was not enough time for a new attorney to take over the case. Huggins stated that he would rather represent himself than wait until July, and the court began its extensive inquiry into Huggins's ability and desire to represent himself. The court asked Huggins questions to determine whether he was knowingly, voluntarily, and intelligently waiving his right to counsel. The questions covered Huggins's knowledge of his right to an attorney and the special expertise an attorney could provide regarding all parts of a trial, including voir dire, direct examination, cross-examination, general advocacy, knowledge of the law and rules of evidence, advice on his right to refuse to testify, and sentencing. The court asked Huggins if he understood that it is "almost unwise to represent [himself]," and he would not get any special treatment as a pro se attorney. Huggins chose not to represent himself, the trial was not continued, and Huggins decided that he would try to hire a new attorney before the trial.

At a hearing on March 13, two days before trial, Huggins was represented by a public defender. Huggins requested a different public defender, and the court agreed to his request but informed him that a continuance would be necessary. Huggins stated that he did not want any further delay and wanted to go to trial. The court asked the same questions it had asked at the previous hearing, and at the end of the inquiry, Huggins insisted on representing himself. He explained, "I've been watching a movie and reading and everything. I can read. I can comprehend. I got common sense." He stated that he still wanted to proceed.

On March 15, 2023, immediately before Huggins's trial, the State moved to sever the felon-in-possession charge, which was granted. Additionally, three counts of committing a terroristic act were nolle prossed. The court again asked Huggins if he wanted to represent himself, and he stated that he wanted to proceed. After the court denied his motion to dismiss, the court asked, "Do you want to continue with this jury trial, or do you want to have an opportunity to have an attorney to represent you?" He insisted on going to trial. The court asked again, "Mr. Huggins, let me just say one more time: I advise you to get an attorney. It will be a much better process for you today." He asked to be released to take care of his family. He stated, "I just want to go home." The court explained that he could go back to jail and await trial until July when he would be represented by an attorney. The court stated, "I can appoint a public defender, and I will appoint a public defender to represent you." After some discussion of a new bond hearing, Huggins stated, "I'm not ready for trial. I might as well go on to prison forever." The following colloquy occurred:

| [HUGGINS]: | Just go ahead, get it over with. That's all – I'm tired of sitting down anyway. Just get me on to prison and y'all go on to bed. And if y'all find me guilty, get me on to prison. This way -- you know what I'm saying? Since I'm – I'm – I'm already convicted anyway. No, I'm not. I ain't going to take no plea. Give it to me. Come on. Let's go to trial. |
| --- | --- |
| [THE STATE]: | You know you're looking at a whole lot more if you – |
| [HUGGINS]: | Yes, I know. I know, sir. |

The State presented the details of the plea deal that Huggins rejected earlier and continued to reject, and Huggins agreed he understood he was potentially exposed to much more time if he went to trial. Again, Huggins insisted on going to trial that day.

The following facts were adduced at Huggins's first trial. On December 13, 2019, April Talbot and her husband, Larry Parks, were in their apartment with their niece, Linda Stover, getting ready to go to Little Rock for the evening. Huggins, Stover's boyfriend, angrily approached Parks in the parking lot of the apartment building. After the confrontation, Stover, Talbot, and Park left in Stover's car. They returned to Stuttgart early the next morning. On their way back, Huggins chased them in a green SUV, rammed his car into Stover's several times, and shot at the car with a .45-caliber gun. Witnesses heard between four and eight shots. When Huggins was arrested, a .45-caliber gun was found in his car, and lab testing indicated that the bullets at the scene of the crime and his gun had similar characteristics. Huggins moved for a directed verdict, it was denied, and the jury retired to deliberate.

During the guilt phase of deliberations, the jury submitted three questions in writing. The jury was never re-called to the courtroom to have its questions addressed. The first written note asked, "Do you have to prove that the defendant was shooting at the car or just shooting?" Below that question was written "2110 South Oak." After some discussion between the court and counsel, the court determined that the jury should refer to the jury instructions, and Huggins suggested, "Tell them what a conveyance is. Conveyance, whatever. Tell 'em that's the car." The court responded, "All right. I am writing 'Please refer to the jury instructions,' or just jury instructions?" The State responded, "Just jury instructions." Huggins did not object.

Second, the jury submitted a written request to hear the 911 call again. The court stated, "Can we hear the 911 call again? It wasn't entered into evidence." The State responded that it was not in evidence, and the court responded, "So I'll have to say no. It was not entered into evidence."

Third, the following colloquy took place:

| | |
|---|---|
| THE COURT: | Okay. So, I need to ask a question before I read this. This is a question regarding language and a typo that they think exists. |
| [THE STATE]: | Okay. |
| THE COURT: | I'm not sure really whole lot of difference that it matters. This is with regard to the firearm enhancement verdict form. Is this language correct? And it is specifically either the or – that's what they've circled ~ or whether or not that should say of? |
| [THE STATE]: | Should say of. I'll have to have Samantha start proofing my jury instructions. |

THE COURT:          Okay. So –

[THE STATE]:         Should be of.

THE COURT:          Should be of. All right.

The jury found Huggins guilty of two counts of aggravated assault, and he was acquitted of committing a terroristic act. He was sentenced to two consecutive terms of two years each for the aggravated-assault convictions. On the sentencing order, the box indicating that Huggins did not voluntarily and knowingly waive his right to an attorney was checked.

The trial on Huggins's felon-in-possession charge took place on August 24, 2023. Huggins stated that he wanted to represent himself at trial, and the court went through the extensive questioning again. At the end of the questioning, he confirmed that he wanted to represent himself. At the trial, the State presented evidence that the police engaged in a high-speed chase of Huggins pursuant to the report that he followed his girlfriend's car while firing a gun. During the chase, police saw Huggins wreck the vehicle, exit it, and flee on foot. No one else was seen in the car or leaving it. When the police searched Huggins's vehicle, they found a .45-caliber handgun.

Huggins was found guilty of possessing a firearm. During the sentencing-phase deliberation, the jury asked two questions:

THE COURT:          Okay, we have a question from the jurors. And the question is, do we need to agree on a number of years for the sentence? And I'm pretty sure I said that in my explanation that they all have to agree on the same number of years. So yes.

(Court in recess)

| | |
|---|---|
| THE COURT: | Another question. Can we know what he is serving on the guilty in March 2023? |
| [THE STATE]: | I don't believe so. It wasn't introduced. Well, it shows ~ the summary shows it was 24 months on two counts of aggravated assault. |
| HUGGINS: | It was two. |
| THE COURT: | There was two. There were two. |
| [THE STATE]: | Two counts of aggravated assault, 24 months on each. |
| THE COURT: | Was it consecutive? |
| HUGGINS: | Yes. |

Huggins was sentenced to 214 months' incarceration in the Arkansas Division of Correction. Again, the box indicating that he did not knowingly and intelligently waive his right to an attorney was checked.

Though Huggins did not timely file his notice of appeal from the first trial's guilty verdicts, we granted his motion to file a belated appeal. His notice of appeal from his second guilty verdict was timely filed. This appeal followed.

After appellate briefing had begun, the State was granted a hearing at which the circuit court bailiff testified about the standard procedure when the jury has a question during deliberation. The bailiff explained that typically when he receives a question from the jurors, it is in writing. He retrieves the question from the jury room; he calls the judge, the attorneys, and the parties back to the courtroom; and the judge reads the question out loud. Usually, those present discuss how the question should be answered. Once an agreement is reached,

the judge writes the answer on the same piece of paper and gives it to him, and he takes it back to the jurors. He testified that it was "the same procedure every time" in his four years as the bailiff. Any paper left on the jury table is destroyed.

The court reporter for the March 15 trial also testified at the hearing and confirmed the bailiff's statement that the written questions do not get entered in the record:

A: The question came with the bailiff, written down on a piece of paper. And we all got together, the judge, both the State and the defendant, and the bailiff and I, and all parties were present for the question and [the judge] read the question off and the issue was dealt with as the transcript reflects.

Q: All right. And were you present when the judge wrote answers on these questions?

A: Yes, sir.

The court reporter for the August 24 trial testified that she had no independent recall of Huggins's trial but had complete confidence in her transcript. The following colloquy took place:

Q: All right. But your transcript is correct as to what was said and how the question was dealt with once it was submitted by the jury; is that correct?

A: Yes.

Q: And was to your knowledge or based upon review of the transcript, was Mr. Huggins involved in each of those discussions?

A: Yes, he made a comment at least on the second question that I have recorded.

II. *Discussion*

A. Failure to Bring the Jurors to the Courtroom

8

Huggins contends that the circuit court erred by not bringing the jurors into the courtroom when they asked questions during deliberations, and the State cannot overcome the presumption of prejudice.

Ark. Code Ann. § 16-89-125(c) (Repl. 2005) provides that

> [a]fter the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

The purpose of section 16-89-125(c) is to protect against misinformation communicated to the jury and to protect against further steps being taken with respect to evidence unless done in open court with counsel present. *Flanagan v. State*, 368 Ark. 143, 164, 243 S.W.3d 866, 881 (2006). Noncompliance with this statutory provision gives rise to a presumption of prejudice, and the State has the burden of rebutting that presumption. *Lewondowski v. State*, 2022 Ark. 46, 639 S.W.3d 850. When the State cannot show what happened resulting from a violation of section 16-89-125(c), it has not overcome the presumption of prejudice.

The State concedes that the circuit court erred by failing to bring the jurors to the courtroom to address their questions; thus, the issue on appeal is whether the State has met its burden of overcoming the presumption of prejudice. Huggins argues that the State failed to show that no prejudice resulted from the circuit court's error because there were times it was not clear that Huggins was in the courtroom when the questions were discussed, and the written questions and responses are not in the record. His arguments are not well taken.

9

In three of the four instances when the jurors asked a question by sending a written note to the court, Huggins was in the courtroom. Huggins's verbal participation in forming the answer to the jury's question is reflected in the record twice. In the third instance, Huggins does not participate in answering the jury's question; however, at the posttrial hearing, the court reporter testified that Huggins was in the courtroom when the questions were asked. All three times, the jury's questions and the circuit court's answers were read aloud by the court, and both the State and Huggins agreed on the responses to the jury's questions. The State asserts it has rebutted the presumption of prejudice that arises from a violation of section 16-89-125(c) because the record reflects the substance of the circuit court's communication with the jury, Huggins never objected to that substance, and the court never had any contact with the jury during deliberations. *See Anderson v. State*, 353 Ark. 384, 394, 108 S.W.3d 592, 598 (2003); *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002). We agree. The substance of the communication is clear from the record; thus, the State has overcome its burden of proving no prejudice occurred.

In the one instance when it was not clear that Huggins was in the courtroom either from the court reporter's testimony or the transcript, the substance of the communication is equally clear. During the sentencing-phase deliberations after Huggins's second trial, the jury asked whether it needed to agree on a number of years for the sentence. The court stated aloud that the jury must agree on the length of the sentence.

Huggins argues that because the written questions and responses are not in the record, the State has not rebutted the presumption of prejudice, and he cites *Davlin v. State*,

10

313 Ark. 218, 853 S.W.2d 882 (1993), for support. *Davlin* is factually distinguishable because in that case, the judge and both attorneys entered the jury room and replayed a video for the jury that had been admitted at trial. Counsel for the defendant objected to his client's absence, and the record did not include an account of what occurred in the jury room. As stated above, in the instant case, the substance of the answer and response is clear from the record, the jury remained separate, and no objections were made.

Huggins urges this court to reverse because the written questions and answers are not in the record. This court has held that no prejudice resulted from the violation of section 16-89-125(c) when the written questions and answers were included in the record. *See Houston v. State*, 41 Ark. App. 67, 848 S.W.2d 430 (1993). However, *Houston* does not require strict compliance with the statute or that the written communication must be included in the record. Instead, the holding in *Houston* focuses on the clarity of what occurred in response to the question and the lack of objection from counsel. On this point we affirm.

## B. Self-Representation

Huggins contends that the checked box on the sentencing forms shows that he did not knowingly and intelligently waive his right to an attorney, and this cannot be considered a scrivener's error. He asserts that the written orders control, and the State did not cross-appeal the court's decision to check the box indicating that he did not knowingly and

intelligently waive his right to counsel; thus, the circuit court's written findings are definitive.[1] He is wrong.

A scrivener's error is one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers. *Jackson v. State*, 2024 Ark. App. 52, 682 S.W.3d 757. Huggins likens the instant case to *Davis v. State*, in which this court held that imposing a sentence to run consecutively or concurrently is not a clerical error. In *Davis*, this court held that

> [a] circuit court may correct a mere clerical error in a judgment at any time; however, a motion to correct a judgment that is based on a substantive claim, such as an allegation that the sentence imposed did not conform to the plea agreement, falls within the purview of Rule 37.1 of the Arkansas Rules of Criminal Procedure. . . . Davis's motion to correct clerical error did not assert a mere clerical error but instead contended that his sentences should be served concurrently, rather than consecutively, in accordance with his plea agreement. Therefore, Davis's motion is treated as one seeking Rule 37.1 postconviction relief.

2024 Ark. App. 556, at 3, 700 S.W.3d 242, 244 (footnote omitted).

In Davis's case, there was a substantial rule change in July 1989, and Davis was sentenced in June 1989. The purpose of the rule change was to adjust the requirements for filing Rule 37 petitions, thereby stemming the flood of petitions. Although Davis characterized the issue as one of a mere clerical error, this court disagreed and held that "it is a claim that his sentence did not conform to his plea agreement; therefore, it had to be

---

[1]Though Huggins suggests that, after the trial, the court may have changed its ruling on his decision to represent himself, he does *not* contend on appeal that the court's oral rulings allowing him to represent himself are erroneous or that his decision to represent himself was not knowingly and intelligently made.

12

raised in a timely petition under Rule 37.1" which, according to the rule change, he did not do. *Id.* at 6, 700 S.W.3d at 246.

Davis is inapposite. In the instant case, the court repeatedly and thoroughly questioned Huggins regarding his decision to waive counsel. Through a series of questions regarding every aspect of a jury trial and the role of attorneys at trial, the court determined and ruled from the bench that Huggins knowingly and intelligently waived his right to counsel. There is no evidence whatsoever that the court ever found anything but that Huggins knowingly and intelligently waived his right to counsel. This court has consistently held that errors on sentencing forms can be clerical in nature. *See Carter v. State*, 2019 Ark. App. 57, at 17, 568 S.W.3d 788, 798 (unchecked habitual-offender box); *Conery v. State*, 2019 Ark. App. 529, at 3, 590 S.W.3d 162, 164 (incorrect sentence); *Farris v. State*, 2024 Ark. App. 188, at 16, 686 S.W.3d 602, 612 (incorrect number of counts); *Brooks v. State*, 2023 Ark. App. 526, at 2 (sentencing order incorrectly reflected negotiated guilty plea). Clerical errors do not prevent enforcement of a judgment, and a circuit court can enter an order nunc pro tunc at any time to correct clerical errors in a judgment or order. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325. The common-law rule of nunc pro tunc orders and the power of a court to make "the record speak the truth, but not to make it speak what it did not speak but ought to have spoken," applies in criminal cases. *Id.* at 35, 383 S.W.3d at 347 (quoting *State v. Rowe*, 374 Ark. 19, at 24–25, 285 S.W.3d 614, 619 (2008)). In light of the evidence that exclusively supports Huggins's knowing and intelligent waiver of his right

to counsel, we hold that the sentencing form box checked in error is a scrivener's error, and we remand to correct the sentencing order.

Last, Huggins contends that pursuant to Arkansas Rule of Civil Procedure 60(b), the circuit court lacks jurisdiction to correct the sentencing order after the appeal has been lodged because the State never requested and was granted leave for it to do so. His argument has no merit.

In *Jackson*, 2024 Ark. App. 52, at 3, 682 S.W.3d at 759, this court held that

> [w]hile we acknowledge that the rule speaks for itself and there is no indication that this court granted leave for such a correction, that is as far as we are willing to go. In *Matlock v. State*, our supreme court held that a circuit court has the power to correct clerical errors nunc pro tunc so that the record speaks the truth. It stated that pursuant to Rule 60(b) of the Arkansas Rules of Civil Procedure, a circuit court may *at any time* correct clerical mistakes in judgments, decrees, orders, or other parts of the record and errors therein arising from oversight or omission. A true clerical error is one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers. A circuit court maintains jurisdiction after a record is lodged on appeal to correct a judgment to speak the truth.

(Footnotes and citations omitted.)

After the notice of appeal has been filed and the transcript lodged with the appellate court, the circuit court loses jurisdiction of the case, except for matters such as appointing defense counsel or correcting the judgment to speak the truth. *Sherman v. State*, 326 Ark. 153, 931 S.W.2d 417 (1996); *Glick v. State*, 283 Ark. 412, 677 S.W.2d 844 (1984); *Fletcher v. State*, 198 Ark. 376, 128 S.W.2d 997 (1939). Accordingly, we affirm and remand for correction of the sentencing order.

Affirmed; remanded to correct sentencing order.

ABRAMSON and TUCKER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.